**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Integrated Sports Media, Inc, et al., | No. C 10-3997 CW  (JL) |
| Plaintiffs, | |
| v. | **Report & Recommendation re Motion for Default Judgment (Docket # 15)** |
| Walter Campos, et al., | |
| Defendants. | |
| _____/ | |

### I.     Introduction

Plaintiff's motion for default judgment was referred by the district court (Hon. Claudia Wilken) under 28 U.S.C. §636(b) for Report & Recommendation. The matter is submitted without a hearing under Civil Local Rule 7-10(b).

Plaintiff, Integrated Sports Media, Inc. (hereinafter "Plaintiff") is an international distributor of sports and entertainment programming. By contract, Plaintiff purchased the domestic commercial exhibition rights to broadcast the CONCACAF World Cup Qualifier Tournament: El Salvador v. Costa Rica World Cup Qualifier Game telecast nationwide on Wednesday, September 9, 2009. This Program included the main match (between El Salvador and Costa Rica) along with undercard (preliminary) bouts, televised replay, and color commentary, hereinafter collectively referred to as the "Program."

United States District Court

For the Northern District of California

1    Plaintiff thereafter entered into sublicensing agreements with commercial entities

2  throughout the United States and its territories, wherein it granted limited public exhibition

3  rights to these entities (sublicensees) for the benefit and entertainment of the patrons within

4  their  respective establishments (e.g., hotels, racetracks, casinos, taverns, bars,

5  restaurants, social clubs, etc.). The interstate transmission of the Plaintiff's Program was

6  encrypted and made available only to Plaintiff's customers (commercial locations that paid

7  Plaintiff the requisite closed-circuit (commercial) license fees to exhibit the Program).

8    On Wednesday, September 9, 2009, investigator Gary Gravelyn observed the

9  unlawful exhibition of the Program at the Defendants' commercial establishment. Gary

10  Gravelyn's observations were later documented in a sworn affidavit now before this

11  Honorable Court. See Declaration of Affiant.

12    On September 7, 2010, Plaintiff filed suit against Walter Campos, individually and

13  d/b/a World Class In Soccer a/k/a World Class Indoor Soccer Arena; and World Class

14  Indoor Soccer Arena, Inc., an unknown business entity d/b/a World Class in Soccer a/k/a

15  World Class Indoor Soccer Arena (hereinafter "Defendants") after Plaintiff's efforts to

16  resolve this matter informally failed. The thrust of Plaintiff's Complaint alleged that

17  Defendants or their employees or agents unlawfully intercepted and intentionally exhibited

18  the Program at Defendants' establishment for the purpose of direct or indirect commercial

19  advantage, thereby violating Section 605 of the Federal Communications Act of 1934, as

20  well as Title 47 U.S.C. § 553. Plaintiff's complaint also includes a pendent common-law

21  claim of conversion.

22    Neither the Defendants nor anyone acting on the Defendants' behalf filed an Answer

23  or any other responsive pleading to Plaintiff's duly served complaint. Accordingly, on

24  November 30, 2010, following Plaintiff's Request, the Court entered default against the

25  Defendants in this action. Plaintiff moved the court to enter judgment against the

26  Defendants.

27

28

United States District Court

For the Northern District of California

II.   **Analysis**

A.   **Both statutory damages and enhanced damages are available to Plaintiff under the U.S. Code.**

Once a default judgment is entered, "it generally is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded and is given the same effect between the parties as a judgment rendered after a trial on the merits." Wright, Miller & Kane, Federal Practice and Procedures § 2684, p. 4-19-20. In that regard, the Defendants' default herein serves as an admission of Plaintiff's well-pled allegations of fact. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). This standard has been applied to cases substantially similar to the one before this Court. See e.g. *Joe Hand Productions, Inc. v. Haddock*, 2009 WL 2136117 (E.D.Cal. 2009). Accordingly, the only issue remaining to be decided in this case is the amount of damages, attorneys. fees, and costs to which Plaintiff may be entitled to recover from Defendants as a result of Defendants' unauthorized exhibition of Plaintiff's Program.

Title 47 U.S.C. Section 605 protects companies like Plaintiff's against the theft of proprietary communications such as the instant Program.  *California Satellite Systems v. Seimon,* 767 F.2d 1364 (9th Cir. 1985); *International Cablevision, Inc. v. Sykes*, 75 F.3d.123 (2d. Cir. 1996). The majority of courts have found that Section 605 applies to cases where the end-user offender obtained a proprietary broadcast by way of a satellite (rather than cable) television programming system.

Because the Defendants have failed to respond to Plaintiff's duly served complaint, Plaintiff cannot determine the precise means that the Defendants used to receive the Program unlawfully. Nevertheless, Plaintiff should not be prejudiced because it cannot isolate the precise means of signal transmission the Defendants used and respectfully submits its prayer for recovery of damages, attorneys. fees and costs pursuant to Title 47 U.S.C. Section 605, as it is inherently reasonable in this instance where the Defendants have placed themselves in default for failing to answer or otherwise respond.

As a starting point, a party aggrieved under section 605 may, at its discretion, recover either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C). Pursuant to that section, the aggrieved party may recover "a sum of not less than $1,000.00 or more than $10,000.00, as the Court considers just" for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). In addition, if the Court determines that a violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court may increase the award of damages by up to $100,000.00 for each violation. 47 U.S.C. § 605(e)(3)(C)(ii) (these damages have come to be referred to as "enhanced" damages). Furthermore, the Court shall award full costs, including reasonable attorneys. fees. 47 U.S.C. § 605(e)(3)(B)(iii). Because Plaintiff constitutes an aggrieved party under 47 U.S.C. section 605, et seq. (hereinafter "Statutes"), see 47 U.S.C. § 605(d)(6), Plaintiff is entitled to damages from the Defendants.

World Class in Soccer is a commercial establishment, and, as such, could only have lawfully obtained the Program if Plaintiff had contracted with Defendants for the rights to show it. However, this lawful approach was not taken. Therefore, Defendants must have undertaken specific wrongful actions to intercept or receive and broadcast the encrypted telecast. See Plaintiff's Affidavit in Support of Plaintiff's Application for Default Judgment by the Court (hereinafter "Plaintiff's Affidavit"). In light of the fact that Defendants necessarily must have committed wrongful acts in order to intercept, receive, and broadcast the Program, coupled with the ongoing piracy problems encountered in the satellite broadcast industry (as discussed in detail below), Plaintiff seeks statutory damages, up to the maximum permissible under statute, from the Court in this action.

Statutory damages are appropriate where actual damages are difficult to prove. *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 519 F. Supp. 730, 732 (S.D.N.Y. 1981). The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952). In this case it would be impossible to calculate the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of the

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  Defendants' unlawful actions. Accordingly, it is appropriate for Plaintiff to elect to receive

2  statutory damages.

3       In order to deter the unlawful use of communications such as the Program,

4  Congress specifically designed the Statutes to provide "both Prosecutor[s] and civil

5  plaintiffs [with] the legal tools they need to bring piracy under control." Trademark &

6  Satellite Acts, P.L.-6678, 1988 U.S. Cong. & Admin. News 7, 5577, 5658; see also *U.S. v.*

7  *Scott*, 783 F. Supp. 280, 281 (N.D. Miss. 1992). To achieve these ends, the Statutes

8  include severe penalties, both civil and criminal, for those who intercept, receive or

9  broadcast protected communications. *Scott*, 783 F. Supp. At 281; see generally 47 U.S.C.

10  § 605(e). Moreover, Congress has equated a violation of the Statutes to a theft of service.

11  1988 U.S. Code Cong. & Admin. News 7, 5577, 4642-43. In 1988, in an effort to further

12  deter theft, Congress amended the Statutes to provide for more severe penalties for

13  violations. *Id.* at 5657.

14       As set forth within Plaintiff's Affidavit, the Defendants' interception, receipt, and

15  broadcast of the encrypted Program was not inadvertent. Section 605(e)(3)(C)(iii) provides

16  for limited damages to the aggrieved party "[i]n any case where the court finds that the

17  violator was not aware and had no reason to believe that his acts constituted a violation of

18  this section . . . .", as stated by Congress, this type of situation occurs rarely:

19      [i]t is not intended that this provision serve in any way as a defense to determination
    of liability under subsection (a), but rather only as provision to be exercised in the
20  court's discretion for those rare instances of ignorance of the law on the part of one
    adjudged to have violated it.Cable Communications Policy Act, P.L. 98-549, 5 U.S.
21  Cong. News. .84 Bd. Vol. 8, 4745, 4751.

22
23       Instead, when Congress enacted the Statutes, it was specifically cognizant of the

24  severe impact of theft of various wire communications, including closed-circuit

25  programming, such as the Program. As stated in the House Bill:

26      The Committee is extremely concerned with a problem which is increasingly
    plaguing the cable industry-the theft cable service. This problem has taken on many
27  forms from the manufacture and sale of equipment intended to permit reception of
    cable services without paying for it, to apartment building dwellers ¡°tapping¡± into
    cable system wire into building's hallway that issued for providing service to a
28  neighbor's apartment unit, to the sale by building superintendents of cable

converters left behind by previous tenants to new tenants. Such practices do not only often permit one to obtain cable services without paying the installation and hookup costs, but also, for instance, involve individuals gaining access to premium movie and sports channels without paying for the receipt of those services.
Theft of services deprives the cable industry of millions of dollars of revenue each year which it should otherwise be receiving. The Committee believes that theft of cable service poses a major threat to the economic viability of cable operators and cable programmers, and creates unfair burdens on cable subscribers who are forced to subsidize the benefits that other individuals are getting by receiving cable service without paying for it. Cable Communications Policy Act of 1984, House Report No. 98-934, 5 U.S. Cong. News. .84 Bd. Vol. -6, 4655, 4720.

Moreover, according to Congress, these incidents threaten to undermine the satellite industry and adversely impact legitimate satellite dealers and satellite programmers who otherwise should be receiving payment for their programming or descrambling devices. *U.S. v. Scott*, 783 F.Supp. 280, 281 (N.D. Miss. 1992) (quoting 1984 U.S. Code Cong. & Admin. News 4655, 4746).

**1.     Statutory damages are available under 47 U.S.C. § 605(e)(3)(C)(i)(II)**

In light of the above observations, as its first basis for relief, Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). As indicated above, the amount of statutory damages to which Plaintiff is entitled for each violation of this section shall be no less than $1,000.00 nor more than $10,000.00 for each violation. *Id.* Plaintiff respectfully requests that this Court award up to the maximum $10,000.00 permissible under the statute.

Before addressing cases that have awarded damages under this section, it is important to note the specific facts of this case. According to the uncontroverted Affidavit of Gary Gravelyn, Defendants broadcasted the Program on two units, a Dynex 32" LCD and 20" Tube Style unit. Declaration of Affiant. The capacity of Defendants' establishment was 50, and three separate head counts while Gary Gravelyn was present (between 6:37 and 6:55 p.m.) revealed the total number of patrons (at various times) to be 11, 11 and 12. World Class in Soccer did not require a cover charge to enter the establishment. *Id.* Even in such cases of commercial signal piracy where there have been no egregious circumstances noted, the court has the discretion to award significant damages.

United States District Court

For the Northern District of California

1    For instance, in the case of *Joe Hand Promotions, Inc. v. Tidmarsh*, 2009 WL

2    1845090 (E.D.Cal. 2009) the Court awarded damages under both sections 605 and 553.

3    This Court looks to the award made under section 605 in the *Tidmarsh* case to take into

4    account the aggregate award as representative of an appropriate punishment (While

5    bearing in mind of course, that this Court may not award more than $10,000.00 per

6    statutory violation). In *Tidmarsh*:

7         [T]he summons and complaint were properly served upon Defendant, her default
          was properly entered, and the complaint is sufficiently well-pled. By her default,
8         Defendant has admitted to willfully violating the referenced statutes for purposes of
          commercial advantage. Although deterrence of future violations are important
9         objectives of the statutes, the facts before the Court indicate that Defendant's
          establishment was not large, with a maximum capacity of approximately 50 people. .
10        . . Plaintiff's investigator . . . noted it contained . . . a large television on one side of
          the establishment and a second, much smaller, television on the opposite side. [He]
11        conducted three head counts while he was present: 23/27/29. He viewed the
          program on one television, a 55¡Ē screen located in the right corner of the
12        establishment. Given the relatively small impact of Defendant's actions, the Court
          finds that the amount of requested damages should be reduced. Id. at *3.
13

14   Even though the court in *Tidmarsh* found a small impact, it nonetheless awarded

15   the $10,000.00 maximum allowed under section 605(e)(3)(c)(i)(II). *Id.* The Court in

16   *Tidmarsh* also awarded an additional $10,000.00 in enhanced damages (the Court did not

17   specify a division of this award between sections 605 and 553). *Id.* The facts of *Tidmarsh*

18   are arguably similar to the facts here (capacity of 50 vs. capacity of 50, one 55" television

19   vs. two televisions, 23, 27, and 29 patrons vs. 11, 11 and 12 patrons), making the number

20   of patrons in this case significantly smaller than in *Tidmarsh.* In *Tidmarsh* the average

21   patron count was 26.34, in this case the average patron count is 11.33.

22   Plaintiff cites a number of cases which are factually distinguishable from this case,

23   including *J & J Sports Productions, Inc. v. Esquivel*, 2008 WL 4657741 (E.D.Cal. 2008),

24   where the program at issue was shown in an establishment with a capacity of 75 and an

25   actual head count of 35/35/35, viewing the program on one television. Plaintiff also cites a

26   case with the identical head count of viewers, one television and no cover charge - *J & J*

27   *Sports Productions, Inc. v. Flores*, 2009 WL 1860520, *2 (E.D.Cal. 2009). Similarly, in *J &*

28   *J Sports Productions, Inc. v. George*, 2008 WL 4224616 (E.D.Cal. 2008), the court

1    awarded maximum statutory damages where the capacity was 30, the head count was 20,

2    there was one 27" television, and no cover charge.

3        Plaintiff cites other decisions where district courts have awarded the statutory

4    maximum under section 605 without regard to the underlying facts, but simply because of

5    the unlawful interception and the need for significant deterrence. For example, in *Kingvision*

6    *Pay-Per-View, Ltd. v. Dosani,* 2006 WL 3316988 (S.D.Tex. 2006), the court held:

7        Several factors present in this case favor granting the maximum statutory damages
         of $10,000.00, as requested. The record establishes that defendant broadcast the
8        event and failed to appear in this suit. The record establishes the use of an unlawful
         device, making the violations willful. These factors, the difficulty in detecting unlawful
9        interception, the widespread problem of piracy, the projected loss to plaintiff, and the
         need for an award sufficient to deter future piracy by defendant and others, weigh in
10       favor of granting maximum statutory damages. Plaintiff has shown the basis for an
         award of $10,000.00 in damages under section 605(e)(3)(C)(i)(II). Id. at 2.2

11

12       The same factors that led the court in *Dosani* to award $10,000.00 in statutory

13   damages are present here. See also *J & J Sports Productions, Inc. v. Lopez*, 2008 WL

14   2915109, *4 (E.D.Cal. 2008) ("The Court also recognizes that deterrence of future

15   violations is a significant objective of § 553 and 605. Accordingly, the Court will recommend

16   that Plaintiff's application be granted and that damages in the sum of $30,000.00 be

17   awarded to Plaintiff."); *J & J Sports Productions, Inc. v. Rubio*, 2008 WL 4360883, *2

18   (S.D.Tex. 2008) ("Several factors . . . the difficulty in detecting unlawful interception, the

19   widespread problem of piracy, the projected loss to Plaintiff, and the need for an award

20   sufficient to deter future piracy by Defendant and others, weigh in favor of granting

21   maximum statutory damages. The Plaintiff has shown the basis for an award of $10,000.00

22   in damages under section 605(e)(3)(C)(i)(II)"); *Kingvision Pay-Per-View Ltd. v. Gadson*,

23   2007 WL 2746780, *2-3 (M.D.N.C. 2007) (Awarding $10,000.00 in statutory damages and

24   $10,000.00 in enhanced damages against a commercial establishment with a seating

25   capacity of 40, 27 patrons viewing the event on 1 large screen television, and a five dollar

26   cover charge.). Of note is that the viewer count in *Gadson* was much higher than in this

27   case.

28       The above cases establish that even where the violations do not appear particularly

     egregious, maximum statutory damages may be awarded. Plaintiff requests that this Court

**United States District Court**
For the Northern District of California

1 consider these cases when determining whether to award Plaintiff up to the maximum

2 permissible under statute.

3       **2.    Enhanced Damages Under 47 U.S.C. §605(e)(3)(C)(ii)**

4       Next, the Court finds that Plaintiff fails to justify a request for enhanced damages

5 pursuant to section 605(e)(3)(C)(ii). Section 605(e)(3)(C)(ii) permits this Court, in its

6 discretion, to award up to $100,000.00 in additional damages where "the violation was

7 committed willfully and for the purposes of direct or indirect commercial advantage or

8 private financial gain . . . ." § 47 U.S.C. ¡× 605(e)(3)(C)(ii).

9       The conclusion that the actions of defendants in cases such as these are willful has

10 been clearly established. *Entertainment By J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219

11 F.Supp.2d 769, 776 (S.D. Tex. 2002) ("Based on the limited methods of intercepting

12 closed- circuit broadcasting of pay-per-view events and the low probability that a

13 commercial establishment could intercept such a broadcast merely by chance," courts have

14 held the unauthorized display of such an event willful); see also *Garden City Boxing Club,*

15 *Inc. v. Paquita's Cafe, Inc.*, 2007 WL 2783190 at *5 (S.D.N.Y. 2007); *J & J Sports*

16 *Productions, Inc. v. Garcia,* 2009 WL 2567891, *4 (S.D.Tex. 2009) ("The Defendant must

17 have engaged in a deliberate act since signals do not descramble spontaneously, nor do

18 television sets connect themselves to cable distribution systems..") quoting *Time-Warner*

19 *Cable of New York City v. Googies Luncheonette, Inc.,* 77 F.Supp.2d 485, 490 (S.D.N.Y.

20 1999); *Joe Hand Promotions, Inc. v. Martinez*, 2008 WL 4619855, *6 (S.D.N.Y. 2008) ("The

21 acquisition of an encrypted signal by defendant undoubtedly required some affirmative

22 actions that imply both a degree of technical sophistication and a desire to obtain a benefit

23 to which defendant was not entitled.").

24       In addition, the conclusion that such an interception is for commercial advantage is

25 also clearly established. "A defendant who intercepts signals and broadcasts programming

26 without authorization in a place of business where certain events are shown to the public.

27 is generally held to have acted willfully and for purposes of commercial advantage."

28 *Garden City Boxing Club, Inc. v. Batista*, 2007 WL 4276836, *5 (E.D.N.Y. 2007); citing *Am.*

*Cablevision of Queens v. McGinn*, 817 F.Supp. 317, 320 (E.D.N.Y. 1993) (further citation

omitted); see also *Joe Hand Promotions, Inc. v. Garcia*, 546 F.Supp.2d 383, 386 (W.D.Tex. 2008) ("Because of the extreme unlikelihood that Defendant could inadvertently have acquired the signal to display the fight, coupled with its failure to file an answer denying Plaintiff's allegations on this issue, the Court finds that Defendant [acted] willfully and for purposes of direct or indirect commercial advantage.") (statutory citation omitted).

Finally, "the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct." *Garden City Boxing Club, Inc. v. Frezza*, 476 F.Supp.2d 135, 138 (D. Conn. 2007); quoting *J & J Sports Productions, Inc. v. Drake*, 2006 WL 2927163, *5 (E.D.N.Y. 2006).

With respect to the appropriate amount of enhanced damages, Plaintiff relies on the case of *Joe Hand Promotions, Inc. v. Haddock*, 2009 WL 2136117 (E.D.Cal. 2009) is instructive. In *Haddock*, the district court awarded a total of $50,000.00 in damages to Plaintiff. *Id.* at *2. The court awarded $25,000.00 under both sections 553 and 605; while not specifically broken down, at a minimum, the enhanced damages must have been $15,000.00. 47 U.S.C. § 605(e)(3)(c)(i)(II) (setting maximum statutory award at $10,000). In *Haddock*, the Court found that because the television was broadcast on *five* televisions and because the establishment was located in a "relatively urban city" with a population in excess of 100,000, the impact was more than minimal. *Id.* Here, the Program was being displayed on *two* televisions when Gary Gravelyn was present. In this case, the population of Redwood City, California, where the Defendants' establishment is located, is in excess of 73,691 people. http://quickfacts.census.gov/ (United States Census determination that the 2006 population of Redwood City, California was 3,691). By comparison, the population of Visalia, California, the city at issue in *Haddock*, was 113,487 at the time the Program was unlawfully exhibited. This Court finds that these figures are not comparable to the case at bar, where the Defendant's venue was located in a smaller city. http://quickfacts.census.gov/qfd/states/06/0682954.html.

United States District Court

For the Northern District of California

1    Plaintiff cites the case of *Kingvision Pay-Per-View, Ltd. v. Gutierrez,* 544 F.Supp.2d

2   1179 (D.Colo. 2008), which offers a less-than-perfect analogy. In *Gutierrez* there were 24

3   patrons in the establishment, as contrasted with the 11 in this case, and the court awarded

4   $5,000.00 in statutory damages under section 605(e)(3)(c)(i)(II). *Id.* at 1184. In

5   determining the appropriate enhanced damages award, the district court noted that the

6   actions of defendants were willful, the problems of piracy were pervasive, and that the

7   award needed to serve as a deterrent. *Id.* at 1185. The Court, however, also found certain

8   factors did not support a substantial damages award. *Id.*  The Court observed that,

9   "Plaintiff presents no evidence of prior violations; Plaintiff provides no evidence of

10   significant earnings by Defendants that night; Plaintiff's loss of revenue for one

11   establishment is not significant; there is no evidence of advertising to entice a larger

12   crowd; the restaurant did not have a cover charge; and there is no evidence that the

13   restaurant charged a premium for food and drinks that night." *Id.* After taking all of these

14   factors that militate against enhanced damages into account, the court still awarded an

15   additional $15,000.00. *Id.* This Court finds the enhanced award in *Gutierrez* to be difficult

16   to justify in light of the court's own acknowledgment of the lack of significant earnings or

17   prior violations.

18    In *Garden City Boxing Club, Inc. v. Frezza*, 476 F.Supp.2d 135 (D. Conn. 2007), the

19   district court noted that the violations were not particularly egregious. There was only one

20   illegal interception, only 33 people were present in the establishment and only a minimal

21   profit was made by the defendant. *Id.* at 139. In addition, it was not established that

22   defendants had ample financial resources. *Id.* Even under these circumstances, however,

23   the court noted awarded $5,000 in statutory damages plus $10,000 for the willful nature of

24   the defendant's violation. *Id.* at 139-140. Again, this Court finds the circumstances of the

25   *Frezza* case to be significantly distinguishable from the case at bar, where there were only

26   11 people present to view the Program.

27

28

United States District Court

For the Northern District of California

In *Kingvision Pay-Per-View, Ltd. v. Dosani*, supra, with respect to enhanced damages under section 605(e)(3)(C)(ii) (called "punitive damages" by the court) the court noted:

> The record shows that defendant showed the Event for the purpose of increasing the business, customers, and sales revenue. The record does not indicate the amount of profit, if any, defendant derived from unlawfully broadcasting the Event. The record does show that the defendant's establishment contained seating for approximately 200 people, approximately 34 people were present, and each paid a cover charge of $3.00. Based on the affidavit showing an intentional violation, this court finds that the record supports a finding of a willful violation and an award of $25,000.00 additional damages beyond the $10,000.00. Id. at *2 (emphasis added).

*Dosani* is not substantially similar to the case herein. The Defendant here did not charge a cover, and the establishment in *Dosani* was much larger.

A slightly more convincing argument for an award of enhanced damages in this case was made by the Central District of Illinois in *Joe Hand Promotions, Inc. v. Cat's Bar, Inc.*, 2009 WL 700125, *2 (C.D. Ill. 2009). In *Cat's Bar* the Court awarded $10,000.00 in statutory damages and an additional $6,000.00 in enhanced damages because the actions of the defendants were willful. *Id.*

The court did no analysis whatever to justify awarding the maximum statutory damages, in effect rendering an arbitrary and conclusory decision on that category of damages. This Court finds that this case constitutes a minimal violation in light of the small size of Defendants' establishment, its location in a smaller city than the other cases cited by Plaintiff, and the small number of patrons and televisions.

However, this Court finds the *Cat's Bar* formula for enhanced damages more compelling.  In determining the $6,000.00 enhanced penalty,  the court multiplied the number of patrons by the fee the defendants should have paid for the commercial license. *Id.* If this Court were to use an identical means of calculation in this action, the enhanced statutory damages award would be $8,497.50. This Court finds this to be a fair and reasonable approach to estimating the actual damages suffered by Plaintiff due to Defendant's action, to justify an award of enhanced damages..

The average number of patrons viewing the Program was 11.33 ( Declaration of Affiant), and the commercial license fee for an establishment of the Defendant's size was

United States District Court

For the Northern District of California

1   $750.00. (Plaintiff's Affidavit in Support of Plaintiff's Application for Default Judgment by

2   the Court, Exhibit 1). [ $750.00 x 11.33= $8,497.50 enhanced damages.]

3       **3.      Nominal damages have proven insufficient to combat piracy.**

4       As noted in *J & J Sports Productions, Inc. v. Castrillon*, 2009 WL 1033364, *3

5   (E.D.N.Y. 2009), absent substantial financial penalties, the defendant will likely continue to

6   illegally display the plaintiff's programming and other such establishments will follow suit.

7   The plaintiff cannot practicably investigate all these infractions, nor should they be

8   expected to do so. *Id.* (internal citation omitted). In order to preserve the plaintiff's

9   livelihood, the defendant must be held accountable for an amount significant enough to

10  deter such conduct. Absent such a deterrent, the defendant and other potential infringers

11  will be encouraged to violate the law, as infringement would be more cost effective than

12  contracting with the plaintiff. *Id.*

13      Otherwise, other commercial establishments "would be encouraged to violate the

14  law knowing the full extent of their liability would not exceed what they would have to pay

15  for a license on the open market." *Fallaci v. New Gazette Literary Corp.*, 568 F.Supp.

16  1172, 1174 (S.D.N.Y. 1983).

17      **B.      Plaintiff is entitled to damages for conversion.**

18      Finally, with respect to the conversion claim, damages for conversion are based on

19  the value of the property at the time of the conversion (plus interest). Cal. Civ. Code §

20  3336; *Krueger v. Bank of America*, 145 Cal.App.3d 204, 215 (1983). In addition, the

21  plaintiff in a conversion action is entitled to fair compensation for the time and money

22  properly expended in pursuit of the property. Cal. Civ. Code § 3336. In this case, Plaintiff

23  seeks $750.00 in conversion damages, the amount Defendants would have been required

24  to pay had they ordered the Program from Plaintiff. This Court finds that this request

25  duplicates the request for enhanced damages and therefore either one or the other should

26  be awarded, but not both.

27      **III.     Conclusion and Recommendation**

28      Admittedly, the unauthorized interception, receipt and broadcast of the Program

and other closed-circuit programming threaten the economic viability of the promotions

United States District Court

For the Northern District of California

1  industry. There are no countervailing social or policy considerations that justify the

2  unauthorized interception of these broadcasts. *ON/TV of Chicago v. Julien*, 763 F.2d 839,

3  843 (7th Cir. 1985); *Subscription Television of Greater Washington v. Kaufman*, 606 F.

4  Supp. 1540, 1544 (D.D.C. 1985).

5       As a result of theft by the Defendants and others, Plaintiff has lost and will continue

6  to lose legitimate commercial customers that are unwilling and financially unable to

7  compete with unauthorized locations, like World Class in Soccer, that exhibit sports and

8  other closed-circuit programming in an unlicensed manner. Because these unauthorized

9  commercial establishments offer programming to their patrons for no fee (or for a fee

10  which is less than the authorized establishments charge), the legitimate commercial

11  establishments cannot attract paying customers to offset their sizeable investments in

12  commercial licensing and event promotion, and as a result, incur substantial financial loss.

13  Ultimately, this eliminates the potential that they will continue to purchase commercial

14  exhibition licenses from the Plaintiff in the future.

15       Theft of closed-circuit broadcasts, such as the Program, by unauthorized

16  commercial establishments adversely impacts both Plaintiff and its lawful customers.

17  Plaintiff pays substantial fees to promoters to obtain the exhibition rights to sublicense the

18  broadcast of closed-circuit programming to authorized commercial establishments.

19  Plaintiff's exclusive source of revenue is the sublicense fees it charges to authorize

20  commercial establishments for the right to broadcast events like the Program. The

21  corrosive effect of commercial signal theft permanently destroys Plaintiff's lawful customer

22  base. *Cox Cable Cleveland Area, Inc. v. King*, 582 F. Supp. 376, 381 (E.D. Ohio 1983).

23       Further, as a direct and proximate result of piracy, Plaintiff has suffered severe

24  damage to its goodwill and professional reputation, and has  lost its right and ability to

25  control and receive fees for transmission of the Program. *Quincy Cablesystems, Inc. v.

26  Sully's Bar*, 640 F.Supp. 1159, 1161 (D.Ma. 1986). When negotiating sublicense fees,

27  Plaintiff represents to commercial establishments that it exercises supervision over the

28  commercial distribution of its programming. When an unauthorized commercial

establishment intercepts, receives, and broadcasts closed-circuit programming, such as

the Program, Plaintiff's reputation and goodwill suffers irreparable damage with its existing
and prospective commercial customers from what appears to be a misrepresentation of
such capabilities on its own part. Ultimately, piracy simply devaluates the product being
lawfully developed, marketed, licensed, or sold to the detriment and injury of all.

In light of the foregoing, this Court recommends that the district court exercise its
statutory discretion to award Plaintiff adequate compensation, which this Court concludes
to be $1,000 in statutory damages and $8,750 in enhanced damages from the
Defendants. The Court bases this conclusion on the factual similarities between this case
and the *Cat's Bar* case,  and the relative fairness of the formula suggested by Plaintiff in
calculating the enhanced damage award based on the same factors as in that case -
number of patrons, equivalent licensing fee and estimated actual damages suffered by
Plaintiff. This Court recommends that the district court enter judgment for Plaintiff in the
amount of $9,750.

Respectfully submitted,

DATED: February 4, 2011

_____
JAMES LARSON
United States Magistrate Judge

G:\JLALL\CASES\CIV-REF\10-3997\R&R-short.wpd

United States District Court
For the Northern District of California